UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RAY BASSETT, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15CV01800 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Ray Bassett, a person in federal custody. On February 28, 2013, Jackson was found guilty by a jury of the offenses of conspiracy to commit bank robbery, possession of a firearm in furtherance of a crime of violence and felon in possession of a firearmof being a felon in possession of a firearm and, on July 12, 2013, this Court sentenced Bassett to the Bureau of Prisons for a term of 138 months, a sentence within the sentencing guideline range. Bassett's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## I.
## STATEMENT OF FACTS

On the evening of October 31, 2011, Otis McAllister ("Otis") sent an email to FBI Special Agent Larry Skora. Otis told Skora he was serving a 37-year sentence in federal prison for bank robbery and firearms convictions. Otis stated that his cousins, Petitioner

Ray Bassett and Willie Bassett ("Willie"), were involved in past bank robberies, but were not charged. According to Otis, his cousins Willie and Petitioner continued to commit crimes and had asked Otis to connect them to a bank employee who could help them rob a bank. Otis offered to divulge the specifics of the bank robbery to the FBI agent and to testify if the Government would file a Rule 35 motion to reduce Otis's sentence. Otis stated that the bank robbery was planned for November 4, 2011, just five days from the date of his email.

On the evening of November 1, 2011, Agent Skora responded to Otis's email. He indicated that he had contacted the U.S. Attorney's Office in St. Louis, but had not heard back. Agent Skora stated the FBI would contact Otis in the near future and thanked Otis for his cooperation.

On November 3, 2011, FBI agents began reviewing Otis's recorded prison phone calls. They overheard, among other things, that: Otis's cousins Petitioner and Willie were involved in Otis's previous bank robberies, but served no time; Otis and his nephew, Anthony McAllister ("Anthony"), agreed to set up Petitioner and Willie to plan a bank robbery, and tip off the FBI; Otis asked Anthony to contact Petitioner and Willie, and Anthony did so; Anthony obtained Petitioner's phone number and provided it to Otis; Otis and Anthony agreed that the target bank would be the Pulaski Bank at 11550 New Halls Ferry Road; Otis and Anthony set the bank robbery for November 4, 2011; Anthony told Otis that Petitioner and Willie drove to St. Louis in a rented Nissan Cube automobile; Anthony informed Otis that he drove Petitioner and Willie by the Polaski bank; Otis told Petitioner and Willie that they needed to plan what to do with bank

2

robbery proceeds; they discussed dividing up the proceeds; and Willie and Ray confirmed to Otis that they had seen the target bank.

On November 3, 2011, FBI Special Agent Bryan Yingling interviewed Otis on the telephone. Otis told the agent that his cousins Petitioner and Willie robbed banks with Otis but got away with it. Otis demanded a Rule 35 motion in exchange for divulging the details of a bank robbery that Petitioner and Willie planned to commit the next morning, November 4, 2011, at 6:30 a.m. Agent Yingling did not promise Otis any consideration for his information. Instead, Agent Yingling responded that time was running out to do anything about the bank robbery.

Otis then admitted, among other things: Petitioner and Willie drove from Memphis, Tennessee, to St. Louis, Missouri, on Tuesday, November 1, 2011, to rob the Pulaski Bank on Friday, November 4, 2011; Anthony was also involved in the plot; Otis communicated with Petitioner and Willie by telephone; Otis chose the Pulaski Bank on New Halls Ferry Road; Otis had "cased" the bank before his incarceration and told Petitioner and Willie it would be a good bank to rob; Otis told Petitioner and Willie that two female bank employees would be working with them on an "inside job"; when one of the bank employees arrived at the bank, Petitioner and Willie would force her to open the bank; Petitioner and Willie planned to use guns; Otis made up the female bank employees and the "inside job" to lure Petitioner and Willie into the bank robbery; Petitioner and Willie planned to rob the bank on November 4, 2011, because Otis told them there would be $5,000,000 inside the bank; they planned to split the bank robbery proceeds among the female bank employee, Otis, Petitioner and Willie; Petitioner and Willie cased the bank

after arriving in St. Louis; Petitioner and Willie planned to wear dark clothing, and caps, masks or wigs; Petitioner rented a gray Nissan Cube in Memphis to use in the bank robbery; and Petitioner and Willie stayed at Anthony's house at 10338 Lilac Avenue after arriving in St. Louis.

In a second telephone interview on the night of November 3, 2011, Otis stated he had just talked to Anthony. Otis confirmed that Anthony took Petitioner and Willie to case the bank, the bank robbery would occur before 7:00 a.m., and Petitioner had a firearm and would probably carry it in his waistband.

Based on the investigation, FBI agents obtained a federal search warrant for 10338 Lilac Avenue and the Nissan Cube. The agents executed the search warrant on the early morning of Friday, November 4, 2011, just hours before the bank robbery was to be committed.

The agents found Petitioner, Willie and Anthony inside the residence. A search of Anthony's bedroom revealed, among other things: a Smith & Wesson .22 caliber semi-automatic pistol, a magazine, ammunition, dark colored clothing, and a roll of duct tape contained in a blue duffel bag and a black and blue backpack. In the living room, agents found, among other things, latex gloves and dark colored clothing in a red duffel bag. Next to the duffel bag, the agents recovered a black knit cap and a dark hat. Inside the Nissan Cube parked in front of the house, the agents found, among other things, dark sunglasses and various bags.

The FBI agents arrested Petitioner, Willie and Anthony and transported them to the

4

St. Louis FBI office, where they were interviewed. Petitioner executed an advice of rights form, waived his Miranda rights, and admitted, among other things: His cousin, Otis, is in prison for bank robberies; Petitioner committed a bank robbery with Otis in 2000; a few weeks earlier, Otis called Petitioner about planning a bank robbery and told Petitioner to contact Anthony; Petitioner asked his brother, Willie, to participate in the bank robbery and Willie agreed; Otis told petitioner the bank robbery would be an "inside job," with a female bank employee involved; Otis told Petitioner the female bank employee would have a co-worker with her who was not part of the plan; Otis told petitioner that Pulaski Bank would be the target bank, and would contain $500,000; they discussed how they would split the bank robbery proceeds; Petitioner arranged for his sister to rent the Nissan Cube in Memphis; Petitioner and Willie drove to St. Louis on November 1, 2011, in the Nissan Cube; Anthony drove Petitioner and Willie past the bank on November 1, to point it out; Willie and Anthony drove by the bank on November 2; Willie and Petitioner went to the bank lot on the morning of November 3; the .22 caliber pistol belonged to Petitioner, who bought it in Memphis for $60 about one month earlier; Petitioner brought the pistol to St. Louis and kept it in the blue bag recovered from the bedroom; Petitioner had a dark hoodie in the bag with the pistol; Petitioner was going to wear the recovered sunglasses during the bank robbery; Willie brought latex gloves in a red duffel bag; Anthony gave Petitioner a black bag to carry the bank proceeds; Petitioner brought the duct tape to tie up the bank employees; Petitioner and Willie planned to arrive at the bank at about 7:00 a.m. on November 4; Willie would approach the "inside" bank employee and Petitioner would grab the co-worker; Petitioner

5

would display the pistol and force the bank employees into the bank; Petitioner and Willie planned to leave Otis's share of the bank robbery proceeds at Anthony's house and depart for Memphis right away; and Anthony told Petitioner that the bank robbery could be a set up, but Petitioner and Willie intended to go forward anyway.

## II.
## PROCEDURAL HISTORY

As a result of the above facts, Petitioner was indicted by a federal grand jury on November 16, 2011, along with co-defendants Anthony McAllister and Willie Bassett. *United States v. Ray Bassett, et al.*, Cause No. 4:11R0481 (SNLJ). The indictment charged Ray Bassett and Willie Bassett in Count I with conspiring to commit a bank robbery. In Count II, Petitioner and Willie Bassett were charged with attempted bank robbery. Count III charged Petitioner with possessing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1). In Count IV, Petitioner was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Count V was not directed against Petitioner. District Court Docket ("DCD") 14, 15.

The grand jury returned a superseding indictment on May 2, 2012, adding Otis McAllister as a defendant and an additional count. The additional count, Count VI, was directed only against Otis. The charges in Counts I through IV against Petitioner remained unchanged. DCD 136.

Petitioner and his co-defendants proceeded to trial before a jury on February 26, 2013. The jury returned its verdict on February 28, 2013, finding Petitioner guilty on the conspiracy charge (Count I) and the firearms charges (Counts III and IV), but not guilty

on the attempted bank robbery charge (Count II). The jury also found Otis McAllister guilty on the charge of Solicitation to Commit a Crime of Violence. However, the jury found both Willie Bassett and Anthony McAllister not guilty on all charges. DCD 308.

Following his conviction, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"). DCD 348. With respect to Count I, the PSR noted that Petitioner's Base Offense Level was 20 pursuant to U.S.S.G. § 2B3.1. PSR ¶ 22. To this, two levels were added under § 2B3.1(b)(1) as "the property of a financial institution was an object of the offense." PSR ¶ 23. This resulted in an Adjusted Offense Level of 22. PSR ¶ 27. As for Count IV, Petitioner's Base Offense Level was 20. There were no adjustments, so his Adjusted Offense Level remained 20. PSR ¶¶ 28, 32. Taking the greater of the two Adjusted Offense Levels – here, 22 – two levels were added to that for a multiple count adjustment under § 3D1.2. PSR ¶¶ 21, 33-36. This resulted in a Total Offense Level of 24. PSR ¶ 39. As for Count III, this charge required a mandatory 60-month sentence consecutive to the sentence for Counts I and IV. PSR ¶ 40.

The PSR also calculated Petitioner's criminal history, concluding that Petitioner had a criminal history score of five. This correlated to a Criminal History Category III. PSR ¶ 54. Based upon a Total Offense Level of 24 and a Criminal History Category of III, the recommended guideline imprisonment range was 63-78 months on Counts I and IV, plus a consecutive term of imprisonment of 60 months on Count III. PSR ¶ 88.

Petitioner appeared before this Court for sentencing on July 12, 2013. The Court sentenced Petitioner to: (1) a 78-month term of imprisonment on Count I; (2) a 78-month term of imprisonment on Count IV, to run concurrently with Count I; and (3) a 60-month

7

term of imprisonment on Count III, to run consecutively to Counts I and IV. This resulted in an aggregate term of imprisonment of 138 months. DCD 360.

Petitioner appealed his conviction and sentence to the Eighth Circuit Court of Appeals. *United States v. Bassett*, 762 F.3d 681 (8th Cir. 2014). On appeal, Petitioner argued the evidence was insufficient to convict him of conspiracy and possession of a firearm in furtherance of a crime of violence. He also argued that the this Court erred by denying his motion in limine to exclude Rule 404(b) evidence. The Eighth Circuit affirmed the conviction and sentence on August 6, 2014. Petitioner filed a petition for writ of certiorari with the Supreme Court. The Supreme Court denied that petition on December 15, 2014.

Petitioner next filed the instant § 2255 motion on December 7, 2015. While the motion was timely filed, it is without merit. Therefore, this Court will deny Petitioner's request for post-conviction relief.

### III.
### PRINCIPLES GENERALLY APPLICABLE TO § 2255 MOTIONS

In general, to state a claim for relief under 28 U.S.C. § 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing court did not have jurisdiction to impose the sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424 (1962). The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal

conviction. *United States v. Skinner*, 326 F.2d 594, 597 (8th Cir. 1964).

Title 28 U.S.C. § 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Instead, a § 2255 cause of action is intended only to correct an error which rises to the level of a "fundamental defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427.

In addition, a collateral attack pursuant to § 2255 is not interchangeable or substitutable for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). That is, a petitioner is usually precluded from asserting claims in a § 2255 motion that he has failed to raise on direct appeal. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir. 1987). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousely v. United States*, 523 U.S. 614, 622 (1998). *See also Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002).

Conversely, claims which were raised but rejected on direct appeal may not be re-litigated in a § 2255 petition. *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly addressed in a § 2255 motion. *United States v. Looking Cloud*, 419 F.3d 781, 788-89 (8th Cir.

2005).

# IV.
# ANALYSIS

## A. Petitioner's Claims

Petitioner raises two claims for post-conviction relief. First, he argues that his counsel was constitutionally ineffective for not challenging Petitioner's actual innocence on Count III of the Indictment for possessing a firearm in furtherance of a crime of violence. Petitioner's motion, p. 5. Second, he contends his attorney was ineffective for failing to object to a multiplicitous indictment. Petitioner's motion, p. 6.

Petitioner also filed a supplemental motion for post-conviction relief. In his supplement, he argued that the double jeopardy clause was violated because Petitioner was convicted for possessing a gun under both 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(c). Petitioner also argues that his counsel was ineffective for failing to argue this issue to the Court. Although Petitioner's supplemental motion was filed after the one-year statute of limitations, the claims raised in his supplemental claim are essentially the same argument raised in his second ground for relief. Therefore, arguably, the untimely supplement relates back to the original motion and can be considered by the Court.

## B. Ineffective Assistance of Counsel Standards

A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To succeed on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's

case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo*, 223 F.3d at 925.

An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, at 687-88; Sera, 267 F.3d at 874. There are two substantial impediments to making such a showing. First, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. *See also Ford v. Lockhart*, 905 F.2d 458, 462 (8th Cir. 1990) (evaluation of a claim of ineffective assistance of counsel is highly deferential with a strong presumption that counsel acted competently). Second, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

In addition to proving a deficiency in counsel's performance, the movant must also prove that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 692. The burden is on the movant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *DeRoo*, 223

F.3d at 925.

A court need not even determine whether a movant meets the "performance" prong of the *Strickland* test. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 697), *cert. denied*, 528 U.S. 880 (1998). *See also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

**C. Counsel was not Ineffective for Failing to Argue that Petitioner was Innocent on Count III**

For his first ground for relief, Petitioner seeks to set aside his conviction under Count III because he contends there was no factual basis to charge him under 18 U.S.C. § 924(c). Petitioner argues that, under *Bailey v. United States*, 516 U.S. 137 (1995), "evidence sufficient to show an active employment of a firearm by the petitioner" is required. Petitioner's Memorandum, p. 2. Petitioner argues that "a gun found by police in a 'Book-Bag that Ray Bassett claimed as his Book-Bag' where no crime were [sic] ever committed merely can be a 'use,' because of the situation, the gun here never became a threat to any one at all." *Id*. Thus, Petitioner argues his counsel was ineffective for failing to present this issue to the Court.

Petitioner cannot prevail on his claim of ineffective assistance of counsel because he cannot establish that his counsel's performance fell below constitutionally acceptable

12

standards. Moreover, even were counsel's performance constitutionally infirm, counsel's performance did not result in prejudice to Petitioner.

1. **Performance**

Petitioner cannot establish that his counsel's representation was ineffective for failing to argue to the this Court or on appeal that Petitioner was actually innocent of Count III. The record is replete with efforts by both of Petitioner's defense counsel throughout the criminal proceedings to pursue such a defense.

First, defense counsel Felicia Jones moved to dismiss the entire indictment on the grounds of entrapment and outrageous government conduct. DCD 87. Second, attorney Jones filed a motion to suppress Petitioner's statements to law enforcement, and it was those statements that provided strong support for the § 924(c) charge. DCD 88. Attorney Jones pursued both of those motions at an evidentiary hearing before the Magistrate Court on March 6, 2012. DCD 107, 114. When the Magistrate Court ruled against Petitioner [DCD 122], Attorney Jones filed objections with this Court. DCD 130.

At trial, Petitioner's second counsel, Matthew Radefeld, continued to pursue Petitioner's innocence. See, in particular, attorney Radefeld's cross-examination of FBI Agent Ankur Patel (Trial Transcript ("Tr."), Volume III ("III"), p. 176-81), and FBI Agent William Meyers (Tr. III, p. 237-61), where counsel challenged the validity of Petitioner's confession and whether Petitioner's firearm was intended to be used in the bank robbery. At the close of the Government's case, attorney Radefeld moved for a judgment of acquittal regarding all charges against Petitioner. Tr. III, p. 288-89. At the close of the evidence, attorney Radefeld made an oral motion for judgment of acquittal as

13

to all counts. Tr. IV, p. 131. During his closing argument, he continued to maintain Petitioner's innocence, including the § 924(c) charge. Tr. IV, p. 191-99. After the jury returned its verdict, attorney Radefeld filed a written motion for judgment of acquittal. DCD 321. He additionally filed a motion for new trial, in which he challenged evidence he believed was improperly admitted that went to the § 924(c) charge. DCD 325, ¶ 9.

Further, counsel raised this issue on appeal. Specifically, counsel argued that there was insufficient evidence to support his conviction for possession of a firearm in furtherance of a crime of violence. The Eighth Circuit rejected that claim as follows, based primarily on Petitioner's own statement to law enforcement:

> At trial, Agent Meyers testified that during a post-arrest interview, Ray Bassett admitted that he asked another person to participate in the bank robbery, and that person agreed. He also described the roles he and the other robber would play: before the bank opened, they would approach the "inside" employee and her co-worker in their cars; Ray Bassett would brandish his gun and grab the co-worker; the other robber would enter the bank with the "inside" employee; and once inside, Ray Basset would tie up both employees, and the other robbery would gather the money. Agent Meyers also testified that Ray Bassett understood he would split the money with the other robber and two others.

*Bassett*, at 685-86.

In addition, the Eighth Circuit noted there was additional evidence, specifically in October 2011 phone calls, "Otis McAllister told Ray Basset to ask Willie Bassett to help rob the bank and to bring guns to make the robbery 'look good.'" *Bassett*, at 686. Further, in another phone call, "Otis McAllister later talked to both Ray and Willie Bassett, who confirmed they were staying at Anthony McAllister's, had everything they needed for the robbery, and had already made plans for their share of the money." *Id*. The Eighth Circuit concluded that this evidence, in addition to other evidence, was sufficient to convict

Petitioner of conspiracy. Thus, "his challenge to the conviction for possession of a firearm in furtherance of a crime of violence is without merit." *Id*.

Petitioner's counsel clearly challenged Count III at every opportunity. The hindrance to Petitioner's claim was not a lack of effort on his counsel's part, but Petitioner's own statement to law enforcement, where he unequivocally established he was using the gun in connection with the bank robbery conspiracy. Therefore, Petitioner's claim that his counsel was somehow ineffective in this regard is without merit.

2. **Prejudice**

Petitioner also fails to meet the Strickland prejudice prong. As stated earlier, the burden is on Petitioner to prove by a preponderance of the evidence that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

As just discussed, the Eighth Circuit considered the sufficiency of the evidence with regard to Count III. That Court agreed with this Court that there was sufficient evidence to support the conviction. Therefore, even if counsel somehow should have pursued this claim more vigorously at the trial level, given the evidence before this Court (especially Petitioner's own statement to law enforcement), it is unlikely this Court would have granted a motion for judgment of acquittal on Count III. As such, Petitioner cannot establish that a reasonable probability exists the outcome of his criminal proceedings would have differed had counsel pursued such a defense at trial. Petitioner's

claim fails.

**D. Counsel Was Not Ineffective for failing to challenge Multiplicitous Indictment**

For his second claim for post-conviction relief, Petitioner contends that "each of the crimes of which he was convicted constituted a single step in an overall criminal enterprise. Petitioner also contends that the Court and his Attorney denied petitioner due process of law by not informing him of the multiplicous [sic] character of the indictments." Petitioner's Memorandum, pg.4. Petitioner contends that "his sentence of 78 months on the conspiracy charge and 78 months on the felon in possession of a firearm" violate double jeopardy because they are "punishments for the same offense." Petitioner's Memorandum, p. 5. Petitioner argues that Counts I, III and IV are all for the same offense because "they all required proof of the same facts." Petitioner's Memorandum, p. 6.

"An indictment is multiplicitous if it charges the same crime in separate counts." *United States v. Platter*, 514 F.3d 782, 785 (8th Cir. 2008). "The rule against multiplicitous prosecutions is based on the Fifth Amendment's Double Jeopardy Clause, which protects against multiple punishments for the same offense." *United States v. Hinkeldey*, 626 F.3d 1010, 1013 (8th Cir. 2010). Typically, multiplicitous prosecutions arise when the indictment includes more than one count charging the same statutory violation. *See e.g. United States v. Woolsey*, 759 F.3f 905, 907 (8th Cir. 2014); *United States v. Emily*, 747 F.3d 974 (8th Cir. 2014). There is no multiplicity, however, if one count requires proof of facts that is not required by the other count. *United States v. Rich*, 795 F.2d 680, 682-83 (8th Cir. 1986).

16

This case is not even a close call. Petitioner was convicted of three distinct crimes, each arising under its own separate statute. The elements of the substantive crimes are not the same. Each crime requires proof of facts that is not required by the other counts. Defense counsel was not ineffective for failing to raise this argument as it was meritless. *Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994) (counsel is not ineffective for failing to make a meritless argument); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to raise a meritless argument cannot constitute ineffective assistance.").

**E. Supplemental Claims[1]**

In his supplemental memorandum, Petitioner argues that he was subjected to double jeopardy. Specifically, he argues that he cannot be convicted under § 924(c) and § 922(g) for possession of the same firearm. He further contends that his counsel was Ineffective for failing to pursue this argument.

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine where there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The same act or transaction may violate two distinct statutes under *Blockburger* "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975).

---

[1] After this case was fully briefed, Petitioner filed a "Motion to Supplement the Record," in which he claims that the case of *Johnson v. United States*, 135 S.Ct. 2551 (2015) somehow requires a reduction in sentence. However, the *Johnson* case deals solely with sentencing under the Armed Career Criminal Act, which was not involved in this case. The claim is frivolous.

Here, Counts III and IV each require proof of facts that the other count does not require. The § 924(c) charge in Count III requires proof that Petitioner possessed a firearm in furtherance of a crime of violence, an element which Count IV does not require. Count IV (felon in possession) requires proof that Petitioner was a convicted felon prior to his possession of a firearm, which a § 924(c) charge does not.

As a result, double jeopardy does not exist in this case. Again, counsel was not ineffective for failing to make a meritless argument. *Dyer*, 23 F.3d at 1426.

## V.
## CONCLUSION

For the foregoing reasons, this Court denies Bassett's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Bassett has not made a substantial showing of the denial of a federal constitutional right.

Dated this 13th day of October, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE